UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TERRY WARREN, JR.,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:16-cv-05338-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

In December 2010, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that he became disabled beginning October 1, 2008. Dkt. 9, Administrative Record (AR) 18. Those applications were denied on initial administrative review and on reconsideration. *Id.* At a hearing held on April 25, 2012, before an Administrative Law Judge (ALJ), plaintiff appeared and testified, as a vocational expert. AR 100-137.

ORDER - 1

In a decision dated July 26, 2012, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled. AR 207-16. The Appeals Council granted plaintiff's request for review of the ALJ's decision, and remanded the matter for further administrative proceedings. AR 224-26. On remand, another hearing was held before the same ALJ, at which plaintiff, represented by counsel, appeared and testified, as did two medical experts and a different vocational expert. AR 42-99.

In a decision dated November 25, 2014, the ALJ again found that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled. AR 18-34. The Appeals Council this time denied plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner, which plaintiff then appealed to this Court. AR 1; Dkt. 3; 20 C.F.R. § 404.981, § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, arguing the ALJ erred:

(1) in evaluating the medical opinion evidence from Keneth Asher, Ph.D., and Norma Brown, Ph.D.; and

(2) in failing to find plaintiff's mental impairments satisfied the criteria of a listed impairment.

For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinions of both Dr Asher and Dr. Brown, but finds remand for further administrative proceedings rather than an award of benefits is warranted.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986);

ORDER - 2

*see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.  The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d

ORDER - 3

595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of*

ORDER - 4

*Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

    A.    Dr. Asher

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.* At step three of that process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of those listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the Listings). 20 C.F.R § 404.1520(d), § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *Tacket*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*; Social Security Ruling

ORDER - 5

(SSR) 96-8p, 1996 WL 374184, at *2 (the determination conducted at step three must be made on the basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248, at *2.

Dr. Asher, one of the two medical experts who appeared at the hearing, testified that plaintiff's mental impairments met the criteria of both Listing 12.04 and Listing 12.06. AR 91. Those Listings provide in relevant part:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. . . .
>
> The required level of severity for these disorders is met when the requirements in both A[1] and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following [symptoms]:
>
> . . .
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or

---

[1] With respect to each mental disorder contained in the Listings:

> "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06 . . . We will assess the paragraph B criteria before we apply the paragraph C criteria. We will assess the paragraph C criteria only if we find that the paragraph B criteria are not satisfied. We will find that you have a listed impairment if the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied."

20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00A. There does not appear to be any issue as too whether plaintiff meets the "A" criteria of either Listing 12.04 or Listing 12.06 in this case.

ORDER - 6

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

. . .

12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following [symptoms]:

. . .

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

ORDER - 7

    4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R., Part 404, Subpt. P, App. 1, § 12.04, § 12.06.

    In regard to the "B" criteria of Listings 12.04 and 12.06, Dr. Asher testified that plaintiff was markedly impaired in his activities of daily living and social functioning, and moderately to markedly impaired in concentration, persistence, or pace. AR 91. As to this last "B" criteria, Dr. Asher testified more specifically that he would put it "at the worse end of moderate." AR 91-92. Dr. Asher also testified that the "C 1.2" criteria of Listing 12.04 were met in that the equivalent of two episodes of decompensation cumulatively had occurred. AR 92. Dr. Asher went on to testify that plaintiff had "really passed the line of not being able to work, of meeting the listing [criteria] sometime after the beginning of 2009 or the end of 2008." AR 93.

    The ALJ gave Dr. Asher's testimony "little weight," finding it "was not well supported by the records with regard to psychological symptoms and limitations." AR 30. Plaintiff argues this was an insufficient reason for rejecting that testimony. The Court agrees. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014); *see also Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required.").

    The record, furthermore, does contain clinical findings and other medical evidence that is supportive of Dr. Asher's testimony. For example, Dr. Brown found plaintiff to be markedly to

ORDER - 8

severely limited in a number of cognitive and social functioning areas. AR 509, 613. She based those assessed limitations at least in part on her own observations and mental status examination results, which revealed some fairly significant abnormalities. AR 509, 511-12, 612-13, 616-17. Mental health treatment notes also contain a number of abnormal findings. AR 750, 752-53, 767, 769, 771, 774, 894, 898, 904, 906, 908. Given that the ALJ did not discuss this evidence in relation to his rejection of Dr. Asher's testimony, the Court cannot ascertain whether or not the ALJ actually properly considered it. As such, the ALJ erred.

     B.    <u>Dr. Brown</u>

Dr. Brown conducted two psychological evaluations of plaintiff, one in March 2009, and the other in January 2011. AR 507-12, 611-17. As just noted, Dr. Brown found plaintiff to be markedly to severely limited in a number of cognitive and social functioning areas. AR 509, 613. With respect to this opinion evidence, the ALJ stated:

> . . . I give little weight to the March 2009 and January 2011 [state agency] psychological evaluation forms completed [by] Norma L. Brown, Ph.D. (Exhibits 1F and 6F). In her January 2011 evaluation, she did not explain how the claimant's trail-making tests were both within normal limits in the March 2009 evaluation but not in 2011; instead, she just assigned the claimant a cognitive disorder. Yet, other medical evidence did not confirm such a diagnosis. Similarly, her diagnosis of Asperger's was not based upon any clinical testing, and no other provider suggested or diagnosed any similar impairment. Her evaluations had mostly mild to moderate limitations with testing within normal limits, thus the marked functional limitations were out of proportion to the medical evidence. For example, the claimant was cooperative and euthymic, which did not comport with her assigned social limitations. Dr. Brown did not have the benefit of reviewing the other medical reports contained in the current record. She therefore apparently relied heavily on the subjective report of symptoms and limitations provided by the claimant, although there exist good reasons for questioning the reliability of his subjective complaints. Additional evidence in the record indicating that the claimant was exaggerating or engaging in pain behavior also suggests that Dr. Brown relied too heavily on the Rey test to determine the claimant's truthfulness. Dr. Brown did not consider the claimant's use of prescription narcotics and marijuana in determining his limitations, as required by the form's instructions. Her medical source statement merely recited reports by

ORDER - 9

>the claimant regarding his activities of daily living and did not provide function-by-function limitations. As such, I grant Dr. Browns' [sic] opinions little weight.

AR 29. Again, the Court agrees with plaintiff that the ALJ failed to provide valid reasons for not giving greater weight to Dr. Brown's opinions.

First, even if the testing performed during both evaluations produced the same results, Dr. Brown provided clinical findings to support the cognitive limitations she assessed. In the March 2009 evaluation, for example, Dr. Brown noted plaintiff could not recite the months of the year or perform a simple three-step command. AR 509. On the mental status examination, plaintiff exhibited poor eye contact, did not know the date, and demonstrated poor memory, insight and impulse control. AR 511-12. In the January 2011 evaluation, Dr. Brown indicated she observed symptoms of a mood disorder and of plaintiff being easily distracted. AR 612. She further noted that he had "significant problems with simple word recall," and "could not recite [the] months of [the] year correctly." AR 613. Again, plaintiff showed poor insight, in addition to varied impulse control. AR 617.

While the ALJ states that other medical evidence did not confirm the cognitive disorder diagnosis, he gives no indication as to what that evidence is or explain why the above clinical findings do not provide sufficient evidentiary support. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (opinion that is based on clinical observations supporting psychiatric depression is competent evidence); *Clester v. Apfel*, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) ("The results of a mental status examination provide the basis for a diagnostic impression of a psychiatric disorder, just as the results of a physical examination provide the basis for the diagnosis of a physical illness or injury."). Nor is testing necessarily required to support a particular psychiatric diagnosis, as the ALJ seems to believe in regard to the diagnosis of Asperger's disorder. *Sanchez*

ORDER - 10

*v. Apfel*, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000).[2]

The ALJ's further assertion that Dr. Brown's evaluations "had mostly mild to moderate limitations," is difficult to reconcile with the significant deficits in memory, distraction, eye contact, insight, impulse control, social avoidance, and ability to recite the months of the year or perform a simple three-step command Dr. Brown found. As such, even though Dr. Brown also noted other, less remarkable findings (AR 511-12, 616-17), the ALJ could not simply ignore those findings that suggest greater restrictions. *See Reddick*, 157 F.3d at 722-23 ("In essence, the ALJ developed his evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports. His paraphrasing of record material is not entirely accurate regarding the content or tone of the record. We conclude that his approach and conclusions do not fully account for the nature of [the claimant's impairment] and its symptoms.").

The ALJ also faulted Dr. Brown for not having the benefit of reviewing other medical reports. But given that Dr. Brown is an examining psychologist, and thus entitled – and indeed expected – to rely on her own observations and clinical findings, the mere fact that she was not able to review other medical reports alone is not sufficient to discredit her conclusions. The ALJ, furthermore, fails to specifically cite such reports or other medical evidence that are inconsistent

---

[2] As the district court explained:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

*Id.* (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)).

ORDER - 11

with those conclusions. To the contrary, treatment notes contain findings that are not out of line with many of those Dr. Brown found. AR 750, 752-53, 767, 769, 771, 774, 894, 898, 904, 906, 908.Thus, the ALJ's statement that for this reason she seemed to rely heavily on plaintiff's own subjective reporting in regard to his cognitive limitations is unsupported.[3]

Lastly, the ALJ discounted Dr. Brown's opinions on the basis that she did not consider plaintiff's use of prescription narcotics and marijuana in determining his limitations. At least in regard to marijuana, though, Dr. Brown appears to have been aware of plaintiff's use thereof at the time of the 2011 evaluation. AR 613 (reporting that plaintiff had a medical marijuana card). In addition, the ALJ fails to point to specific evidence in the record that plaintiff's use of either prescription narcotics and marijuana significantly impacted his mental health functioning at the time of either evaluation. Rather, such evidence appears to be largely absent from the record, and the evidence that does appear is for a period well after Dr. Brown's most recent evaluation. *See, e.g.,* AR 521-23, 902, 1007. Accordingly, for all of the above reasons, the ALJ erred in rejecting the opinion evidence from Dr. Brown.

II.     Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record

---

[3] On the other hand, with respect to the social functioning limitations Dr. Brown assessed, neither evaluation form contains much in the way of objective clinical findings in support thereof. AR 507-12, 611-17. Accordingly, given that the ALJ found plaintiff to be not entirely credible concerning his alleged symptoms and limitations (AR 25-28), a finding that plaintiff has not challenged, the ALJ was not necessarily remiss in discounting those limitations on the basis that Dr. Brown largely relied on plaintiff's own subjective reporting in assessing them. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a medical source opinion if it is based "to a large extent" on the claimant's self-reporting, which has been properly discounted).

ORDER - 12

that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Although plaintiff argues remand for an award of benefits is proper based on Dr. Asher's testimony that his mental impairments met the criteria of Listings 12.04 and 12.06, as well as the mental functional limitations Dr. Brown assessed, it is not entirely clear that the evidence in the record overall supports such a finding. Specifically, while Dr. Brown did assess several marked cognitive functional limitations, and provided clinical findings in support thereof, such evidence is largely absent in regard to the social functioning limitations she assessed as well. As such, it is far from clear that the opinion evidence from Dr. Brown supports a finding that the "B" or "C" criteria of either of the above Listings would be met. Nor does the other medical evidence in the record clearly support a finding of disability at step three. Remand for further consideration of these issues therefore is warranted.

In addition, the ALJ's errors in evaluating the medical opinion evidence in the record call into question as well his assessment of plaintiff's RFC. A claimant's RFC assessment is used at step four of the Commissioner's sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can

ORDER - 13

do other work. SSR 96-8p, 1996 WL 374184, at *2. It is what the claimant "can still do despite his or her limitations." *Id.*

A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found that plaintiff had the mental RFC to understand, remember, and carry out simple routine tasks of unskilled work with no public contacts, and occasionally interact with co-workers, but that he could not perform tandem tasks or work in close coordination. AR 24. But in light of the ALJ's failure to properly evaluate the testimony and opinion evidence from both Dr. Asher and Dr. Brown, this RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations.

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's

ORDER - 14

testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the second hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 32-33. But because as discussed above the ALJ erred in assessing plaintiff's RFC, the hypothetical question the ALJ posed to the vocational expert – and thus that expert's testimony and the ALJ's reliance thereon – cannot be said to be supported by substantial evidence or free of error. Accordingly, because issues still remain with respect to plaintiff's RFC and his ability to perform other jobs at step five, remand for further consideration of those issues is warranted as well.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 28th day of October, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15